880 So.2d 172 (2004)
Shallon T. GLOVER, Plaintiff-Appellant
v.
GENERAL MOTORS, Defendant-Appellee.
No. 38,805-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*173 The Cook Law Firm Counsel, by Dale T. Montgomery, II, Haughton, for Appellant.
Lunn, Irion, Salley, Carlisle & Gardner, by J. Martin Lattier, Shreveport, for Appellee.
Before STEWART, PEATROSS and MOORE, JJ.
MOORE, J.
The claimant, Shallon T. Glover, appeals a judgment that granted her employer General Motors' motion for involuntary dismissal and rejected her claim to reinstate workers' compensation benefits. Finding legal error, we reverse and remand.

Procedural Background
Ms. Glover had been employed at General Motors since 1969; by September 1999 she was an assembly-line worker with an average weekly wage of $960.70. She testified that she sustained a work-related injury in 1997, resulting in permanent restrictions; she returned to work, but was eventually placed in a job that exceeded her restrictions. On September 21, 1999, she re-injured herself trying to pull a regulator out of a container; she fell into the container, resulting in "unbearable" pain all over her right side. General Motors began paying her compensation benefits, both indemnity and medical, as a result of this accident.
After the September 1999 accident, Ms. Glover treated her pain with physical therapy and prescription medications. One of her physicians, Dr. Jerry H. Smith, reported to General Motors' Life and Disability Benefits program on March 21, 2000, that she was unable to return to work owing to "permanent disability." A staffing report from Spectrum Rehabilitation Center on March 14 referred to "FCE [functional capacity evaluation] reports" that declared her "unemployable." In May 2000, Dr. Smith indicated on a standard-form "attending physician's statement" that Ms. Glover's disability would exceed 12 months.
Another of her physicians, Dr. Glen Sholte, completed a similar form in January 2001, stating that Ms. Glover was totally disabled and would never be able to return to work. On November 6, 2001, Dr. Smith noted, "Her most recent FCE * * * in March basically had an unemployable level and I believe she basically remains there at this time." A concomitant report from Spectrum Rehabilitation, entitled "Functional Capacity Evaluation" and signed by a physical therapist, found that Ms. Glover's effort was "inconsistent, [with] moderate pain behavior present during testing."
In December 2001, another of her physicians, Dr. James S. May, completed the standard-form attending physician's statement with the handwritten conclusion, "permanent total disability."
On July 3, 2002, General Motors' compensation manager advised Ms. Glover that her benefits would be terminated effective June 30, 2002, pursuant to La. R.S. 23:1221(3)(d)(iii). The letter explained that she had been paid 104 weeks of compensation as of October 7, 2001, and that all subsequent payments had been overpayments. The letter finally informed her that she could apply for a hearing with the OWC, but warned that General Motors reserved the right to seek reimbursement in the event she did so. In August 2002, General Motors executed an LDOL Form 1003 (stop payment form), formally advising the state and claimant of the termination of benefits. The form declared that General Motors had paid Ms. Glover $54,473.14 in temporary total disability ("TTD") payments, and indicated no supplemental *174 earnings benefits ("SEB") or any other kind of indemnity benefits. The form also stated that benefits were being terminated because Ms. Glover had retired.
Ms. Glover filed the instant disputed claim for compensation in November 2002, seeking reinstatement of benefits. By pro se claim she stated: "I elected to receive retirement benefits. However, I have not retired. I did not withdraw from the work force. My unemployment is caused solely by employment injury."
General Motors answered the claim, asserting benefit reductions and offsets pursuant to La. R.S. 23:1206, 1225 and 1221(3). By amended pretrial statement, General Motors also contested whether Ms. Glover sustained a compensable injury in September 1999.
The matter proceeded to trial on November 4, 2003; Ms. Glover represented herself. She described her injuries and testified that she was totally disabled from working. She introduced numerous medical records, the highlights of which are summarized above. She also called Mr. Willie Thomas, whom she had hired to help her with household chores.
After Ms. Glover rested, General Motors moved for involuntary dismissal. In support, counsel argued that the payment of TTD benefits was subject to a six-month limitation that became effective in August 1999, after which TTD would be converted to SEB which, in turn, could be terminated upon retirement. The WCJ stated from the bench that Ms. Glover had not introduced an FCE, only a doctor's report stating that two FCEs were inconclusive. The court granted General Motors' motion, holding that Ms. Glover failed to prove either permanent, total disability or TTD; the termination of benefits was not improper. By written judgment, the WCJ further found that Ms. Glover did indeed sustain a work-related injury on September 21, 1999.
After retaining counsel, Ms. Glover filed a motion for new trial, seeking to introduce additional evidence of other FCEs. After a hearing in January 2004, the WCJ denied her motion, finding a lack of due diligence in obtaining these documents. The instant appeal followed.

Discussion
By two assignments of error, Ms. Glover urges the WCJ was plainly wrong in finding that she was not permanently, totally disabled, and abused its discretion in denying her motion for new trial. General Motors responds that it was entitled to terminate indemnity benefits after the claimant retired and received 104 weeks of benefits, under La. R.S. 23:1221(3)(d)(iii), and that the WCJ was not plainly wrong in finding that Ms. Glover failed to prove permanent, total disability by clear and convincing evidence, as required by R.S. 23:1221(2)(c).
The WCJ committed legal error. The basis for termination of benefits urged by General Motors and accepted by the WCJ is R.S. 23:1221(3)(d)(iii), which states (with emphasis added):
(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
* * *
(iii) When the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
General Motors' LDOL Form 1003 (stop payment form) clearly indicates that it had paid Ms. Glover temporary total disability benefits for 141 weeks. There *175 is no indication that it ever paid her any SEB. For this reason, the 104-week limitation of 23:1221(3)(d)(iii) simply does not apply. Moreover, the employer may not shift an employee's indemnity benefits from TTD to SEB in the absence of an appropriate justification. White v. Louisiana State Penitentiary, 93-770 (La.App. 3 Cir. 3/2/94), 634 So.2d 1271; Joiner v. Newberg Venture, 94-1533 (La.App. 3 Cir. 5/3/95), 657 So.2d 206; Malone & Johnson, 13 La. Civ. L. Treatise (Workers' Compensation, 4th ed.), § 276, pp. 665-666 (West Group, ©2002). The instant record discloses no change in Ms. Glover's physical condition that would justify shifting her benefits to SEB.
At trial, counsel argued that a special statutory provision placed a six-month limit on TTD. From 1989 until August 15, 1999, TTD benefits were payable until "continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs." A 1999 amendment, however, removed the six-month cap. See 1999 La. Acts No. 702, § 1, effective August 15, 1999. R.S. 23:1221(1)(d) now provides:
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee can be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.
Ms. Glover's entitlement to benefits is obviously governed by the version of the statute in effect at the time of her injury, September 21, 1999. Chevalier v. L.H. Bossier Inc., 95-2075 (La.7/2/96), 676 So.2d 1072; Loflin v. International Paper Co., 34,976 (La.App. 2 Cir. 8/22/01), 793 So.2d 533. The post-amendment version does not provide for an automatic shift from TTD to SEB after six months. The WCJ committed legal error in finding the benefits shifted and were subject to termination after retirement and the receipt of 104 weeks' indemnity benefits.
Because the WCJ applied the wrong law to the termination of benefits, his findings are not governed by manifest error. Bujol v. Entergy Services Inc., XXXX-XXXX (La.5/25/04), ___ So.2d ___, 2004 WL 1157413; Richardson v. Aldridge, 37,192 (La.App. 2 Cir. 5/16/03), 854 So.2d 923, writ denied, XXXX-XXXX (La.2/6/04), 865 So.2d 743. If the record is otherwise complete, the appellate court should review the evidence de novo and render judgment. Id.; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. In this case, however, we do not consider the record to be "otherwise complete." Appearing pro se, Ms. Glover offered no medical records more recent than December 2001; however, represented by counsel, she sought a new trial on grounds that she had obtained a copy of her FCE. The interests of justice require that the WCJ assess this omitted evidence together with the other medical records, in light of the credibility of the live witnesses. We will therefore remand the case for further proceedings consistent with this opinion.

Conclusion
For the reasons expressed, the judgment of involuntary dismissal is reversed and the case remanded to the OWC for further proceedings. Costs of appeal are assessed to the appellee, General Motors.
REVERSED AND REMANDED.