MOORE, J.
_jjThe Monroe City School Board (“MCSB”) appeals a judgment which awarded the claimant, Doris Key, supplemental earnings benefits (“SEB”) from the date of termination of prior benefits, ordered MCSB to provide knee surgery, and awarded a penalty of $2,000 and attorney fee of $8,000. Ms. Key answers the appeal, seeking additional attorney fees for responding to the appeal. For the reasons expressed, we affirm the judgment and deny the answer to appeal.

Factual Background

Ms. Key had worked as a custodian at Monroe City Schools since 1980. The parties stipulated that at the time of the accident, her comp rate was $204.83 per week. In February 2006 she was applying stripper to a classroom floor at Thomas Jefferson Elementary when she slipped and fell, landing on her knees and badly injuring the right one. She reported the accident to her supervisor and went to MCSB’s doctor, who eventually sent her to Dr. Brian Bulloch, an orthopedic surgeon.
Dr. Bulloch placed her on physical therapy and pain management, including steroid injections, which yielded minimal results. He performed arthroscopic surgery in May 2006; Ms. Key testified that this helped but she still had to use a walker or a cane. Dr. Bulloch performed a total right knee replacement in January 2007; as a result, according to Ms. Key, the knee is better but still gets stiff easily. A functional capacity evaluation in April 2007 limited her to sedentary work, noting that she “will have difficulty returning to work in the custodial department” at MCSB. Owing to her pain and limited mobility, Ms. Key retired from MCSB on July 27, 2007.
|2Because of favoring her right knee for years, Ms. Key’s left knee began bothering her; Dr. Bulloch performed arthroscopic surgery in January 2009 and prescribed eight weeks’ therapy. Knowing the pain and possible complications of knee replacement, she was not yet willing to do this on the left knee but testified that she would consider it if the condition got worse. At trial in July 2009, she listed four pain medications she takes daily and testified that in her current state she cannot work as a custodian.
*1148 Immediately after the accident, MCSB began paying Ms. Key weekly benefits at the stipulated comp rate of $204.83 and provided the right knee surgeries and therapy. Sometime before her first arthroscopic surgery, MCSB sent her a letter about working as a school bus monitor, but after the operation she was unable to work at that time. She never received any further job leads from MCSB.
On April 22, 2008, MCSB terminated Ms. Key’s benefits, citing that she was now retired and had already received the 104-week statutory maximum of SEB. Ms. Key filed this disputed claim in May 2008.
At trial in July 2009, the parties stipulated that Ms. Key sustained a work-related accident. Counsel for Ms. Key stated that she had been receiving temporary total disability (“TTD”) benefits until these were terminated in April 2008; MCSB did not object. The only witness was Ms. Key, who testified as outlined above. She also introduced her medical records from Dr. Bulloch’s clinic and Louisiana Pain Care. MCSB cross-examined Ms. Key but called no witnesses and introduced no documentary evidence.
|oThe WCJ ruled from the bench that Ms. Key had no intention of retiring but for her work-related injury; in these circumstances, she was deemed not retired for purposes of workers’ compensation benefits. The WCJ then noted Dr. Bul-loch’s report of April 10, 2007, that Ms. Key could do sedentary work or medium work without pushing and pulling, and that MCSB terminated her benefits over a year later. The WCJ found that MCSB never reclassified Ms. Key’s benefits as SEB, and on the record presented, she was entitled to SEB from the date of termination; she was also entitled to the left knee surgery. Finally, the WCJ found no evidence to support the termination of benefits and no attempt to offer rehabilitation services. She therefore assessed a penalty of $2,000 and an attorney fee of $8,000.
MCSB has appealed, raising five interrelated assignments of error.

Discussion: Standard of Review

By its first assignment of error, MCSB urges that de novo review is warranted because the WCJ committed multiple errors of law. Citing the rule of Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, MCSB lists its remaining assignments of error as legal errors that interdicted the fact-finding process.
Ordinarily, the factual findings of the WCJ are subject to manifest error review. Buxton v. Iowa Police Dept., 2009-0520, p. 18 (La.10/20/09), 23 So.3d 275, 287; Dean v. Southmark Const., 2003-1051 (La.7/6/04), 879 So.2d 112; Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Under this standard, the reviewing court does not decide |4whether the factfinder was right or wrong, but only whether its findings are reasonable. Buxton v. Iowa Police Dept., supra; Stobart v. State, 617 So.2d 880 (La.1993).
An exception to manifest error review applies in the event of legal error:
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law, such as a consequential but erroneous ruling on the exclusion or admission of evidence, forecloses any finding of fact, and the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
Slier v. Lafayette Ins. Co., 2007-2441, p. 19 (La.4/8/08), 988 So.2d 186, 201; Foley v. Entergy La. Inc., 2006-0983 (La.11/29/06), 946 So.2d 144; Evans v. Lungrin, 97-0541 *1149 (La.2/6/98), 708 So.2d 731; McLean v. Hunter, 495 So.2d 1298 (La.1986).
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Evans v. Lungrin, supra at p. 7, 708 So.2d at 735; Lasha v. Olin Corp., 625 So.2d 1002 (La. 1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id. When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id.
For the reasons discussed below, we discern no legal errors in the proceedings below: no incorrect rulings on motions or objections, no improper admission or exclusion of evidence, no application of the wrong |5law to the case. Moreover, the WCJ’s factfinding role was not interdicted, impeded or tainted in any way. She carefully restated the salient facts of Ms. Key’s testimony, and this court notes that MCSB put on no evidence whatsoever to contradict the claimant. On this record, we find no basis for a de novo review and instead have applied the manifest error standard.

Sufficiency of Demand and Effect of Retirement

By its second assignment, MCSB urges the award of SEB was beyond the scope of relief sought by, or that could be awarded to, Ms. Key. MCSB shows that the claimant must allege, in her Form 1080, “the benefit in dispute” and “the specific compensation benefit which is due[.]” La. R.S. 23:1310 B, 23:1311 A(3). It contends that because Ms. Key alleged she had been receiving TTD, a resumption of TTD was the only issue properly before the court. It also argues that SEB for a retired employee are subject to a statutory cap of 104 weeks under La. R.S. 23:1221(3)(d)(iii). MCSB asserts that from the outset, it classified Ms. Key’s benefits as SEB and was entitled to end them as of April 2008. It concludes that the WCJ failed to make a definite ruling that the prior benefits were SEB instead of TTD.
Ms. Key responds that MCSB did not object to counsel’s assertion that her benefits were TTD, and offered no evidence to show otherwise, so the WCJ’s finding that the employer terminated TTD was not plainly wr ong.
A workers’ compensation claim must set forth the time, place, nature and cause of injury, “the benefit in dispute,” and the employee’s actual earnings. La. R.S. 23:1310 B. Moreover, the petition must set forth the “specific compensation benefit which is due but has not been paid or is not lfibeing provided.” La. R.S. 23:1311 A(3). Ms. Key’s Form 1080 alleged that “wage benefits [were] reduced or terminated on: April 22, 2008” and that she had a bona fide dispute as to her disability status. This is sufficient to allege a “benefit in dispute” or a “specific compensation benefit,” whether it might be TTD, SEB or any other form of indemnity. The WCJ was entitled to award any compensation benefits proved by Ms. Key.
The right to SEB is subject to a maximum of 520 weeks, but shall terminate “[w]hen the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than 104 weeks.” La. R.S. 23:1221(3)(d)(iii). The retirement referred to in § 1221 (3) (d) (iii) is not resignation from work because of disability; it refers only to a worker who has no intention of returning to work regardless of disability. Johnson v. Bossier Parish Sch. Bd., 43,817 (La.App. 2 Cir. 1/21/09), 3 So.3d 580, 242 Ed. Law Rep. 951, writ denied, 2009-0676 *1150 (La.5/15/09), 8 So.3d 586; Peters v. General Motors Corp., 39,279 (La.App. 2 Cir. 1/26/05), 892 So.2d 717, and citations therein. When a worker has retired from a heavy work duty job but is still willing to take on light duty employment within the scope of the limitations imposed by her disability, then that worker is said not to have withdrawn from the workforce and is not considered retired under § 1221 (3)(d)(iii). Peters v. General Motors, supra; Oestringer v. City of New Orleans, 2003-2213 (La.App. 4 Cir. 6/2/04), 876 So.2d 240, and citations therein.
Ms. Key testified that she retired “because of [my] knees” and “when I get well, I will, you know, return * * * [because] I liked working for the |7Monroe School Board.” MCSB put on absolutely no evidence to the contrary. On this record, the WCJ could find that Ms. Key retired only because of her work-related injury and thus was deemed not retired for purposes of § 1221(3)(d)(iii). This assignment of error lacks merit.

Award of SEB

By its third assignment, MCSB urges the award of SEB was not supported by sufficient evidence. It quotes La. R.S. 23:1221(3) in extenso but argues only that the WCJ erred in relying on the medical records offered by Ms. Key because she never showed Dr. Bulloch’s expertise in any field. Without expert opinion as to her disability, MCSB submits .there is no evidence on which to base the award of SEB.
Ms. Key responds that Dr. Bulloch’s reports show that she can no longer earn 90% of her pre-injury wage and that MCSB offered nothing to dispute his expertise or medical opinion.
The failure to object to evidence at trial waives the right to contest it on appeal. La. C.E. art. 103; Brown Radiator & Frame v. Kidd, 44,354, p. 13 (La.App. 2 Cir. 6/24/09), 13 So.3d 1244, 1251, and citations therein. This record clearly shows that when Ms. Key offered the Orthopedic Clinic records into evidence, MCSB’s counsel replied, “No objection.” Hence this court has no basis to disregard either Dr. Bulloch’s expertise or medical conclusions. He limited her to sedentary work but as of the time of trial she had not yet begun working. The WCJ was entitled to find that by April 2008 she could do some work but was unable to earn 90% of her pre-injury wage. This assignment lacks merit.
| sClassification of Benefits
By its fourth assignment, MCSB urges the WCJ failed to make a specific finding classifying, as either TTD or SEB, the benefits Ms. Key received until April 2008. MCSB maintains that her benefits were always SEB and subject to termination after 104 weeks. It concedes, however, that the WCJ was correct in finding that after April 2008, she was not entitled to TTD.
Ms. Key responds that at trial, her counsel asserted that her benefits had always been TTD, and MCSB did not object; hence, the WCJ was not plainly wrong to find that she had been receiving TTD until termination. She also argues that the employer may not surreptitiously shift benefits from TTD to SEB just to assert the time limitation of § 1221(3)(d)(iii). Glover v. General Motors, 38,805 (La.App. 2 Cir. 8/18/04), 880 So.2d 172.
Ms. Key correctly shows that MCSB neither objected nor offered any evidence to contradict her claim that her benefits had been TTD. This court cannot help but feel that with a modicum of effort, such as taking Dr. Bulloch’s deposition or moving for an independent medical examination, MCSB could perhaps have shown that Ms. Key was able to do some kind of work prior to April 2008. However, MCSB put *1151 on no evidence at all. The WCJ was therefore not plainly wrong to accept Dr. Bulloch’s report and find that Ms. Key was entitled to receive, and in fact receiving, TTD until termination.
The employer may not shift an employee’s indemnity benefits from TTD to SEB in the absence of an appropriate justification. Glover v. General Motors, supra, and citations therein; Malone & Johnson, 13 La. Civ. Law Treatise (Workers’ Compensation, 4th ed.), § 276, pp. 665-666 (West Group, ©2002). The instant record discloses no evidence to justify shifting her benefits to SEB prior to Dr. Bulloch’s report of April 2008.
The WCJ was not plainly wrong in classifying Ms. Key’s benefits. This assignment lacks merit.

Penalty and Attorney Fee

By its final assignment, MCSB urges the WCJ erred in finding an arbitrary and capricious termination of benefits. It reiterates that Ms. Key never demanded SEB, the relief ultimately awarded, and hence the failure to pay SEB cannot violate the statute. It also asserts that because “questions existed, remain unresolved,” the penalty and attorney fee are not warranted. Finally, it contends there was absolutely no documentation for the $8,000 attorney fee and hence it lacks factual and legal basis.
Ms. Key responds that the WCJ has great discretion in assessing a penalty and attorney fee. Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112. She submits there was no abuse of discretion. By answer to appeal, she requests an additional attorney fee for responding to MCSB’s appeal.
Any employer or insurer who at any time discontinues payment of compensation claims due, when such discontinuance is found to be “arbitrary, capricious, or without probable cause,” is subject to a penalty not to exceed $8,000 and reasonable attorney fee. La. R.S. 23:1201 I; Brien v. Leon Angel Constructors Inc., 42,904 (La.App. 2 Cir. 3/12/08), 978 So.2d 576, writ denied, 2008-0802 (La.6/6/08), 983 So.2d 919; Williams v. Tioga Manor Nursing Home, 2009-0417 (La.App. 3 Cir. 11/18/09), 24 So.3d 970. Arbitrary and capricious conduct is “willful and unreasonable action, without consideration and regard for the facts and circumstances presented.” J.E. Merit Constructors Inc. v. Hickman, 2000-0943, p. 5 (La.1/17/01), 776 So.2d 435, 437-438; Brien v. Leon Angel, supra. Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Co. United, 2004-0100 (La.3/2/05), 894 So.2d 1096.
A workers’ compensation claimant is generally entitled to an additional attorney fee to reflect additional time incurred in defending the employer’s unsuccessful appeal. Frith v. Riverwood Inc., 2004-1086, p. 13 (La.1/19/05), 892 So.2d 7,15; Thomas v. Hollywood Casino, 44,271, p. 14 (La.App. 2 Cir. 5/13/09), 13 So.3d 717, 725. Any award of an attorney fee is subject to review under the court’s inherent power to regulate the practice of law. State v. Williamson, 597 So.2d 439, 441-442 (La.1992); Reed v. St. Francis Med. Center, 44,211, p. 8 (La.App. 2 Cir. 4/8/09), 8 So.3d 824, 829.
The WCJ found no change in Ms. Key’s condition between April 10, 2007, the date of Dr. Bulloch’s partial medical release, and April 22, 2008, the date of termination of benefits. The medical records fully support this conclusion. For the reasons already discussed, MCSB took no ac *1152 tion to reclassify her benefits from TTD to SEB and thus get the time limitation of |n§ 1221(3)(d)(iii). Even if it had, MCSB would have been liable to Ms. Key for 104 weeks, but terminated benefits after only 54 weeks. MCSB’s action appears arbitrary and capricious, and without due regard for the facts and circumstances presented. The imposition of the penalty and attorney fee will be affirmed.
As to quantum, this court notes that the hearing before the WCJ lasted under one hour and a pretrial mediation conference yielded only the notation, “additional time needed.” Counsel completed and filed a Form 1008, as well as a three-page pretrial statement and a motion to continue. With all due respect to the economic necessities of representing comp claimants, the court finds that the $8,000 fee awarded stretches the upper limit for this claim. We find that this fee -will adequately compensate counsel for his work in the OWC and for preparing a 4)£-page appellate brief. The assignment of error lacks merit, and the answer to appeal will be denied.

Conclusion

For the reasons expressed, we affirm the judgment of the WCJ in favor of the claimant, Doris Key, but deny her answer to appeal. The appellate filing fee of $121.50 is to be paid by the employer, Monroe City School Board. La. R.S. 13:5112 A.
AFFIRMED. ANSWER TO APPEAL DENIED.
BROWN, C.J., concurs with written reasons.