Judgment rendered November 22, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,447-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| TIFFANY NIELSEN | Plaintiff-Appellee |
| versus | |
| NAKIA NIELSEN | Defendant-Appellant |

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 46,400

Honorable Will Barham, Judge

* * * * *

| | |
|---|---|
| NEWMAN OLIVEAUX & MAGEE, LLP<br>By: Trey N. Magee | Counsel for Appellant |
| LAW OFFICES OF DAWN H. MIMS<br>By: Dawn (Mims) Hendrix | Counsel for Appellee,<br>Tiffany Nielson |
| MICHAEL R. ELLINGTON<br>Assistant District Attorney | Counsel for Intervenor-<br>Appellee, State of<br>Louisiana DCFS |

* * * * *

Before PITMAN, STONE, and ELLENDER, JJ.

PITMAN, J., concurs in the results.

ELLENDER, J., concurs in the results.

**STONE, J.**

This civil appeal arises from the Fifth Judicial District Court, the Honorable Will Barham, presiding. The plaintiff-appellee, Tiffany Nielsen ("Tiffany"), and the defendant-appellant, Nakia Nielson ("Nakia"), are the mother and father of J.N., J.S.N., and J.M.N. Tiffany filed a rule to modify custody, visitation, for contempt of court, court costs, and attorney fees, and a motion for immediate return of the minor child. Nakia filed an Answer and Reconventional Demand requesting that he be awarded sole custody of their eldest child, J.N. The trial court denied both parties' motions to modify custody and ordered that the parents continue to have joint legal custody. The trial court ordered that Nakia's nondomiciliary custody or visitation occur in the State of Louisiana, that J.N. be returned to Tiffany, and that the costs be equally assessed to each party. The trial court further ordered that Nakia not be held in contempt for failure to return J.N. and for failure to pay child support. The trial court also deferred the issue of child support to the Department of Children and Family Services, Child Support Enforcement ("DCFS") division. From this judgment, Nakia appeals.

For the reasons set forth below, we reverse the judgment of the trial court and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

Tiffany and Nakia were married on August 21, 2010, in Delhi, Louisiana, and three children were born of the marriage, namely: J.N. (DOB: 11/29/08), J.S.N. (DOB: 01/01/13), and J.M.N. (DOB: 05/23/15). Tiffany and Nakia separated in 2018 and divorced on March 12, 2020. This matter first came to trial pursuant to Tiffany's petition for sole custody in October

2018.  At the conclusion of the 2018 trial, Tiffany's request for sole custody was denied, the parents were awarded joint legal custody, and Tiffany was designated the domiciliary parent.  Nakia was also ordered to pay $1,100 in child support per month.  A considered decree reflecting that ruling was executed on August 13, 2019.

In 2022 (pursuant to the court order), the children spent the summer with Nakia in Ohio.  At the end of the visit, Nakia returned J.S.N. and J.M.N. to Tiffany but refused to return J.N.  Also at that time, Nakia was nearly $30,000 in child support arrears.[1]  As a result of Nakia's failure to adhere to the court ordered custody schedule, Tiffany filed the aforementioned rules, asserting among other things, that: (1) separating the children will have a harmful and deleterious effect on all the minor children; (2) since the 2019 judgment, Nakia has moved eight separate times across several states and does not have a stable residence; (3) Nakia lacks stable employment and is not financially supporting the children; (4) Nakia willfully violated the current custody order by keeping J.N. past his allotted visitation time; (5) during his periods of physical custody of the children, Nakia willfully interferes with communication between the minor children and their mother; (6) Nakia has not complied with the custody schedule and considers visitations to be at his convenience; (7) Nakia neither communicates nor provides an address to Tiffany where he currently resides or to where he is relocating; (8) Nakia does not constructively co-parent with Tiffany, nor is he involved in any decision-making regarding the children's educational, medical, or other decisions concerning their welfare; and (9)

---

[1] During his testimony at trial, Nakia admitted to not returning custody of J.N. to Tiffany and to not paying child support as ordered.

Nakia has willfully failed and refused to pay court-ordered child support; and, as a result, should be held in contempt.

The two-day trial commenced on November 22, 2022, at which time Nakia filed an answer and reconventional demand. In his reconventional demand, Nakia asserted that: (1) due to J.N.'s unhappiness, poor academic performance, and behavioral issues in Louisiana, it would be best that J.N. live with him; (2) he did not return J.N. to Tiffany at the end of his visitation period because he believed it was in J.N.'s best interest and that returning J.N. to Tiffany would be deleterious to the child; (3) J.N. begged to stay in Ohio with Nakia and did not want to return to Louisiana to live; (4) he believed that he should not be held in contempt because he was justified in keeping J.N. and was in the process of filing for sole custody of J.N. when he was served with Tiffany's rules to show cause; and (5) he has made substantial child support payments to Tiffany and has filed for a reduction in child support.

During the trial, several witnesses were called by the parties. However, without the request of either party, the trial court called Mr. Willie Ray Nielsen ("Mr. Nielsen"), Nakia's father, as its own witness. Mr. Nielsen agreed to appear voluntarily. Prior to his testimony, the trial court stated, "I want you to know … that [Mr. Nielsen's appearance] was exclusively my idea; you're not in any kind of trouble or anything like that. I just wanted to hear from you so that I can make a good decision with regard to these three minor children …" Counsel for Nakia cross-examined Mr. Nielsen but subsequently objected to the trial court's authority to call its own witness.

In making its custody determination, the trial court stated that it considered the best interests of the children, as well as any material changes in circumstances that have occurred since the entry of the original custody decree. With regard to contempt, the trial court defined contempt as "the willful and contumacious disregard for a court order." Although the trial court found that Nakia's conduct was willful, the trial court declined to hold Nakia in contempt because the court did not think that Nakia had a contumacious disregard for the court order. The trial court expressed that Nakia's "heart was in the right place." As a result, the aforementioned judgment was imposed.

Nakia appealed, asserting that by calling Mr. Nielsen as its own witness, the trial court contravened La. C.E. art. 614(A) and that this error was prejudicial to his case. Nakia argues that he did not have adequate time to prepare for cross-examination of Mr. Nielsen; and, as a result, he was severely prejudiced by his father's testimony.

Tiffany answered the appeal, arguing the following assignments of error: (1) the trial court erred in denying her motion for sole legal custody of the three minor children; (2) the trial court erred in denying her motions for contempt for Nakia's failure to return J.N. to her and for failure to pay child support as ordered; and (3) the trial court erred in deferring the motion for contempt for nonpayment of court-ordered child support to DCFS. Tiffany further argues that La. C.E. art. 614 gives the court authority to call its own witnesses. She alternatively asserts that if this court finds that the trial court erred in calling its own witness, it should be considered a harmless error (and not a prejudicial one). Furthermore, Tiffany contends that Nakia did

not present sufficient evidence to justify the modification of custody that he was seeking.

## DISCUSSION

*Calling of witnesses by the court*

The appellate court shall render any judgment that is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the *de novo* standard of review. *City of Shreveport v. Shreveport Mun. Fire & Police Civ. Serv. Bd.*, 52,410 (La. App. 2 Cir. 1/16/19), 264 So. 3d 643. Appellate review of a question of law is to determine whether the trial court was legally correct or legally incorrect. *Johnson v. Breck Constr. Co.*, 32,311 (La. App. 2 Cir. 9/22/99), 743 So. 2d 296.

La. C.E. art. 614 states, in pertinent part:

> **A. Calling by court.** The court, at the request of a party or if otherwise authorized by legislation, may call witnesses, and all parties are entitled to examine witnesses thus called.
> **B. Questioning by court.** The court may question witnesses, whether called by itself or by a party.
> **C. Objections.** Objections to the calling of witnesses by the court or to questioning of witnesses by it may be made at the time or at the next available opportunity when the jury is not present.[2]

La. C.E. art. 103 states, in pertinent part:

> **A. Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

---

[2] The Louisiana Official Revision Comments under La. C.E. art. 614 state in pertinent part: "It should be observed, however, that in both civil and criminal cases the court has broad discretion to act in the interests of justice, and, although usually one of the parties will request the court to call a necessary witness, it is conceivable that there may be compelling circumstances, e.g. child custody matters, where it would be proper for a court to act on its own motion." While this comment seems to contradict the article itself, comments are not the law.

5

> **(1) Ruling admitting evidence.** When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection;

In determining the effect of a legal error, the party alleging the error has the burden of showing that the error was prejudicial to his case. *Mosley v. Griffin*, 50,478 (La. App. 2 Cir. 2/24/16), 191 So. 3d 16. "Error is prejudicial when the error is material and, when compared to the record in its totality, has a substantial effect on the outcome of the case. Prejudicial error is reversible error. An error that is not prejudicial is a harmless error and is not a reversible one." *Duzon v. Stallworth*, 01-1187 (La. App. 1 Cir. 12/11/02), 866 So. 2d 837, *writs denied*, 03-0589 (La. 5/2/03), 842 So. 2d 1101, 03-0605 (La. 5/2/03), 842 So. 2d 1110; *Neumeyer v. Terral*, 478 So. 2d 1281 (La. App. 5 Cir. 1985), *writ denied*, 481 So. 2d 631 (La. 1986). See also *Pratt v. Culpepper*, 49,627 (La. App. 2 Cir. 2/27/15), 162 So. 3d 616. "When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*." *Key v. Monroe City Sch. Bd.*, 45,096 (La. App. 2 Cir. 3/10/10), 32 So. 3d 1144.

In this case, the trial court called Mr. Nielsen as a witness without the request of either party. Although we appreciate the reason the trial court called Mr. Nielsen as a witness, we find that the trial court lacked the requisite legislative authority to do so. Even if the trial court had the authority, we find that the trial court's action was not prejudicial to Nakia's case when compared to the record in its totality.

*Modification of Child Custody*

Ordinarily, child custody cases are reviewed under the abuse of discretion standard. *Leard v. Schenker*, 06-1116 (La. 6/16/06), 931 So. 2d 355. However, "where one or more trial court legal errors interdict the fact-finding process, the manifest error or abuse of discretion standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine the sufficiency of the evidence." *Cook v. Sullivan*, 20-01471 (La. 9/30/21), 330 So. 3d 152.

The Louisiana Supreme Court has recognized a distinction between two types of custody awards. The first type of custody award is a considered decree, which is an award of permanent custody in which the trial court receives evidence of parental fitness. The second type of custody award is a consent decree or a stipulated judgment, which the court renders when both parties consent to a custodial arrangement and no evidence of parental fitness is taken. *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So. 3d 231.

Different burdens of proof apply to modify each of the two types of custody awards. Those jurisprudential requirements are embodied in *Bergeron v. Bergeron*, 492 So. 2d 1193 (La. 1986). First, "the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody." Second, "[t]he party seeking a change bears the heavy burden of proving that the continuation of the present custody order is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of

environment is substantially outweighed by its advantages to the child." *Id*.

Clear and convincing evidence means a standard more than a preponderance but less than beyond a reasonable doubt. Under this standard, the existence of the disputed fact must be highly probable or much more probable than not. *Talbot v. Talbot*, 03-0814 (La. 12/12/03), 864 So. 2d 590.

In contrast to considered decrees, "where the original custody degree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." *Evans v. Lungrin*, 97-0541 (La. 2/06/98), 708 So. 2d 731.

In the case *sub judice*, there is no question that the 2019 custody award is a considered decree and, therefore, subject to the heightened standard of *Bergeron*.

The trial court, in its determination, stated:

> [T]he primary concern of the Court is the best interest of the children, and when the order is by the *consent* of the parties, the parent seeking a change of custody must show a material change of circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child and those are the parameters wherein the Court makes the following rulings.

We find the trial court committed legal error by not applying the proper standard—the *Bergeron* standard. Having found the trial court committed a legal error that interdicted the fact-finding process, and given the complete trial record, we review the record *de novo* to determine whether Tiffany should be granted sole custody of the three minor children.

Since the original custody order in 2019, Tiffany has shown several instances regarding Nakia's inability to co-parent effectively and Nakia's

8

blatant disregard for the trial court's original custody order that amounted to a material change in the children's circumstances and, as a result, had a deleterious effect on the welfare of the minor children. The record reflects Nakia's continuous refusal to obey the trial court's original custody order. When questioned about violating the original custody order, Nakia openly admitted that he retained physical custody of J.N. for four months and that he did not have such court authority.

> Q: … So, did you have a court order allowing you to retain custody of J.N. after August of 2022?
> …
> A: No, I did not have a court order for that.
>
> …
>
> Q: Sir, are you admitting, sir, that you retained custody of physical custody of J.N. beyond the date when he was to be returned to Tiffany Nielsen?
>
> A: Yes, I did.

At trial, Tiffany testified how separating J.N. from his other siblings had a negative impact on all three children. Tiffany testified how their other two children cried and often asked when J.N. would be returning home. Nakia confirmed, during his testimony, that all of the children cried as they were being separated when J.N. remained with him.

The record also reflects that Nakia has not financially supported the children and has not paid the required child support award of $1,100 per month, nor has he made the necessary payments toward his arrearages. When asked about his disregard for the court's order and his failure to pay child support and arrears, Nakia stated:

> A: I'm the man of my household, I uphold the law in my household standard, I do not break the law, I do not go outside of the law.
>
> Q: You don't obey Court orders, right?

9

Court: I'll make that decision, Ms. Mims.

Q:    Well, I mean you don't pay child support pursuant to the Court order, correct?

A:    Not pursuant to the Court order, no.

                                    ***

Q:    It's your testimony you've sent money every month?  How much?

A:    It varied depending on – depending on how much I could afford to send at that period.  Most of the time it was around three hundred bucks give or take some.

Q:    Three hundred dollars a month?

A:    No. per time, sometimes it was twice a month, sometimes it was once a month, but every time I sent I sent somewhere you know around three hundred bucks.
…
Q:    It's supposed to be eleven hundred?  So you admit you have not been sending eleven hundred dollars a month?

A:    No, I have not been sending eleven hundred a month, I asked for a re-evaluation of that.[3]
…
Q:    … So as of this date you've not had a court date and your child support has remained unchanged, is that correct?

A:    Correct.

Q:    Okay.  And you understand you're approximately thirty thousand dollars in arrears at this point?

A:    So they say.

When asked to explain how he went from $17,000 in arrears in 2018

to $30,000 in arrears in 2022, Nakia could not explain how this number

_____

[3] At trial, Tiffany introduced a print out from the child support enforcement website that showed: (1) in December 2021, Nakia was submitted to the State Tax Refund Offset Program; (2) in August 2022, Nakia was submitted to the State Tax Refund Offset Program, as well as the Passport Denial Program; and (3) in September 2022, Nakia was submitted to the credit bureaus, and that the most recent review and adjustment process was completed and that modification of his child support obligation was not justified. In addition, the child support enforcement logged that they are unable to locate Nakia and that they did not have a current employer for him on file.

drastically increased but stated that he "tried to get in contact with the state and the case worker" to no avail. The record shows the opposite to be true.[4]

Nakia is under the misconception that $300 per month is sufficient to provide for the needs of three minor children and has no problem with relegating his parental obligations to Tiffany. Nakia's testimony shows that he pays child support at his convenience and that he disregards the financial pressure he has placed on Tiffany. Nakia's lack of financial support has exhausted Tiffany to the point that she no longer bothers to ask Nakia for help with any extracurriculars for the children because he does not make any attempt to pay his full child support obligation. In the past five years that the children have played sports, Nakia has only paid for one of the children's All-Star uniforms and fees.[5] Most recently, the two youngest children have taken up karate, and Tiffany shoulders the responsibility of paying for that as well. This further shows that Nakia has no interest in financially supporting or facilitating the social and physical development of the children. Furthermore, Tiffany testified that in order to "do the right thing" and facilitate out-of-state visitations between the children and their father, she has experienced financial strain. Specifically, Tiffany testified that transporting the children halfway to whichever state Nakia happens to be living in at that time is hard on her and dramatically increases her expenses. Tiffany also stated that Nakia does not reimburse her for gas or for the extra distances she has to travel to meet him halfway to exchange the children. In addition, when she exercises her visitation with the children during Nakia's

---

[4] See footnote 3.
[5] All-star teams are generally non-school league teams that offer an elevated level of play for highly skilled athletes. Participating in All-star sports are often extremely expensive due to the costs of uniforms and travel accommodations.

11

summer visitation, she has to bear the cost of making yet another lengthy drive to see the children — again, with no financial help from Nakia. Tiffany mentioned that while Nakia offered to purchase plane tickets for the children in the spring of 2022, she declined due to her and J.N.'s concerns about flying. She found it concerning that Nakia could afford to purchase plane tickets for the children but could not contribute child support for the children's daily lives. The decision to extract himself from his children's lives was Nakia's decision and choice alone. Moving from state to state, as he wishes, clearly demonstrates Nakia's disregard for the financial considerations Tiffany must endure in making travel arrangements for herself and the children. Tiffany testified that she often has to plan far in advance to be able to afford her bills and make the trips to exchange the children with Nakia. This further proves that there has been a material change in circumstances affecting the welfare of the children because she has borne the majority of the financial responsibilities for their children with little to no help from their father, Nakia.

Another glaring material change affecting the welfare of the children is Nakia's lack of gainful employment and transient lifestyle since the original decree was entered. The record outlines approximately eight different states that Nakia has lived in since 2018, namely: Ohio, South Dakota, Delaware, Oklahoma, Louisiana, Kansas, Wyoming, and Missouri. Nakia is a labor hand who works for third-party contractors that provide labor for job sites throughout the country. Moreover, due to his unpredictable out-of-state housing situation and extreme distance from Louisiana, Nakia is sometimes unable to exercise his summer visitation and can hardly ever exercise weekend visitation with the children. It is clear that

12

visitation is arranged only when it is convenient for Nakia. Consequently, the minor children do not see Nakia during the school year and go several months at a time without seeing him at all. Nakia has also had several stints of unemployment and layoff periods that prevent him from carrying or maintaining healthcare insurance coverage for the children. As a result of the circumstances mentioned above, Nakia has not played any substantial role in the children's day-to-day lives. The vast majority, if not all, of the responsibility has fallen on Tiffany to support the children emotionally, financially, medically, and educationally. The record shows that Nakia's only major involvement with the children's education occurred when he kept J.N. in violation of the court order and enrolled him in an online school. Only then did Nakia make any substantial effort to be involved in J.N.'s education. Nakia has failed to pull his own weight since the considered decree was ordered. For these reasons, the joint custody regime has proven to be deleterious and insufficient for the needs of the children.

On the record before us, we find that Tiffany has proven a material change in circumstances that negatively impacts the children. Tiffany has also met the *Bergeron* standard and showed that the current circumstances are so deleterious to the minor children that a change in custody is warranted. Therefore, based on our *de novo* review of the record, we find that Tiffany should be awarded sole custody of the minor children with Nakia to have visitation only in the State of Louisiana and that the joint custody award be reversed.

*Motion for Contempt*

La. C.C.P. art. 224 states, in pertinent part:

A constructive contempt of court is any contempt other than a direct one. Any of the following acts constitutes a constructive contempt of court:
…
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court;

La. C.C.P. art. 222 states, in pertinent part:

A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.

Any of the following acts constitutes a direct contempt of court:

(1) Contumacious, insolent, or disorderly behavior toward the judge, or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority;

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order. Such a determination will be reversed only when the appellate court can discern an abuse of that discretion. *Miller v. Madison Par. Police Jury*, 53,955 (La. App. 2 Cir. 5/17/21), 320 So. 3d 479. "To find a person guilty of constructive contempt, it is necessary to find that the contemnor violated the order of the court intentionally, knowingly, and purposely without justifiable excuse." *Rockett v. Rockett*, 51,453 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1227. "The authority to punish for contempt of court falls within the inherent power of a court to aid in the exercise of its jurisdiction and to enforce its lawful orders." *In re Merritt*, 391 So. 2d 440 (La. 1980).

14

The record is clear that Nakia failed to make a substantial amount of child support payments, pay the proper amount of $1100 per month in child support, and pay $200 per month toward arrears per the court's original custody decree and that he retained J.N. without a court order to do so. The trial court defined contempt as the "willful and contumacious disregard for a Court order." The trial court further stated that Nakia's conduct was "willful by any standard." Based on our review of the contempt statute, the trial court's impression that Nakia's conduct had to be both willful and contumacious is incorrect. We find that the trial court conflated the difference between direct and constructive contempt and that Nakia committed constructive contempt in retaining J.N. and in failing to pay his specified child support obligation. We, therefore, will remand this issue to the trial court to determine the appropriate punishment under La. R.S. 13:4611(1)(d)(i) for violation of its judgment.

*Deferring Child Support Matters to Child Support Enforcement*

Pursuant to U.R.C.A. Rule 2-12.4, "all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assignment of error or issue for review which has not been briefed." A mere statement of an assignment of error in a brief does not constitute a briefing of the assignment. *State v. Free*, 48,260 (La. App. 2 Cir. 11/20/13), 127 So. 3d 956.

Because Tiffany failed to brief this assignment of error properly, this issue is deemed to be abandoned.

**CONCLUSION**

For the reasons stated above, the joint custody award is reversed, and Tiffany shall be awarded sole custody of the minor children. The matter is

15

to be remanded to the trial court to determine the appropriate punishment under La. R.S. 13:4611(1)(d)(i) for violation of its judgment. All costs of this appeal are assessed to the appellant.

**REVERSED AND REMANDED.**