WILLIAMS, J.
 

 I,Claimant, Linda Ann Kinchen, appeals a judgment of the Office Of Workers’ Compensation (“OWC”), denying her workers’ compensation benefits due to her retirement from the Shreveport Police Department. For the following reasons, we reverse the portion of the judgment of the workers’ compensation judge (“WCJ”), finding that claimant was not entitled to supplemental earnings benefits (“SEB”) because of her retirement from the workforce. However, we affirm that portion of the judgment denying claimant’s request for an award of penalties and attorney’s fees.
 

 FACTS
 

 Claimant was employed as a Captain with the Shreveport Police Department (“the City”) with over 27 years of service. On October 25, 2006, claimant injured her left shoulder while participating in a mandatory recertification training activity. Claimant continued to work, performing administrative duties, until May 2, 2007, when she underwent a surgical repair of the rotator cuff of her left shoulder. Claimant received temporary total disability benefits, along with paid sick leave, from May 2, 2007, until she returned to work, with restrictions, on October 22, 2007.
 

 
 *1014
 
 On November 5, 2007, claimant was examined by her surgeon, Dr. Shane Barton, who noted that claimant was “improving,” but continued to have left shoulder pain in certain positions. Dr. Barton recommended that claimant receive additional physical therapy and referred her to a clinical social worker for symptoms of anxiety and depression. Dr. Barton allowed claimant to continue “modified” work duties, and restricted her lifting to 20 pounds at waist level and 5 pounds at overhead level.
 

 12At the time of claimant’s injury and initial return to work, she was a captain in the police department’s Human Resources Division, where her job duties primarily consisted of overseeing police personnel and recruiting. On November 6, 2007, claimant received a “Personnel Action Notice” informing her that she was being transferred from the Human Resources Division to the Uniform Services Division, effective November 16, 2007. Claimant testified that she was able to perform the duties of a captain in the Human Resources Division because she had virtually no contact with the public and/or criminal suspects. However, she stated that after she was transferred to the Uniform Services Division, her duties included supervising patrol officers, who often brought arrestees to the department to complete paperwork; attending city council meetings, where she would possibly be required to restrain and/or arrest citizens; and being assigned to weekend “commander duty” which entailed responding to crime scenes. Claimant testified that she was able to perform all of her administrative duties required in the Uniform Services Division; however, she was fearful that she would not be able to do “regular police work.”
 

 On December 17, 2007, claimant wrote a letter of retirement, stating:
 

 I am writing this to advise you that, effective January 1, 2008, I will be retiring from the Shreveport Police Department.
 

 I have enjoyed by 27 years working for the department but feel it is time for me to pursue my personal interest.
 

 [[Image here]]
 

 At the time of her retirement, claimant had not undergone testing to determine any disability rating. However, on May 19-20, 2008, claimant [ounderwent a functional capacity evaluation (“FCE”) and was assigned a 12% left upper extremity disability rating and a 7% total disability rating. Claimant was 56 years old when she retired, and had completed the Deferred Retirement Option Program (“DROP”).
 
 [1]
 

 On September 29, 2008, claimant filed a disputed claim for workers’ compensation benefits, seeking supplemental earnings benefits (“SEB”) from January 1, 2008, to date, attorney’s fees, penalties, and payment for counseling and psychiatric treatment. In response, the City filed an answer in which it generally denied all claims. Subsequently, the City filed an amended answer, asserting the following affirmative defenses: (1) claimant “voluntarily took a regular tenure retirement and, as such, claimant has voluntarily withdrawn from the workforce[;]” and (2) at the time of claimant’s voluntary retirement, there was available work for her “that satisfied any putative workplace re-
 
 *1015
 
 strietions imposed by the claimant’s treating physicians.”
 

 Thereafter, the City filed a motion for summary judgment, arguing that claimant had voluntarily retired; therefore, she was not entitled to SEB. The WCJ denied the City’s motion. Following a trial on the merits, the WCJ found that claimant had retired and denied her claim for SEB. In the reasons for judgment, the WCJ noted:
 

 By early retirement, you short-circuited the system. I think the system could have worked in your favor; | ¿however, you made a subjective decision on your own that was not based on objective, someone else’s objective findings; okay. The doctor said that you should be on light duty for a year and at the end of that time have an FCE, a functional capacity assessment, and at that time you may be able to return to full duty without restrictions. We never got to that point so we don’t know what you can and cannot do today. We have your testimony but we don’t have a doctor saying this is what you can and cannot do. As far as shooting a weapon, I looked at Dr. Barton’s testimony very carefully. He said, you know, I never made a decision on that. So we don’t know where we would be had you stayed there.
 

 * * *
 

 [I]f you had filed this [workers’ compensation claim] instead of retiring, it may have changed the entire picture, but now I don’t know why you waited.
 

 * * *
 

 Claimant now appeals.
 

 DISCUSSION
 

 Claimant contends the WCJ erred in finding that she was not entitled to SEB benefits. She argues that the WCJ’s finding that she had retired, within the meaning of LSA-R.S. 23:1221(3)(d)(iii), was manifestly erroneous.
 

 The City contends it is immaterial whether or not claimant retired within the meaning of the statute. It argues that claimant has not met her burden of proving that she sustained a work-related injury that resulted in the inability to earn 90% or more of her pre-injury wages.
 

 It is well settled that the factual findings of the WCJ are subject to manifest error review.
 
 Buxton v. Iowa Police Dept.,
 
 2009-0520 (La.10/20/09), 23 So.3d 275;
 
 Key v. Monroe City Sch. Bd.,
 
 45,096 (La.App.2d Cir.3/10/10), 32 So.3d 1144. Under this legal standard, the reviewing court 1 ¿does not decide whether the factfin-der was right or wrong, but only whether its findings are reasonable.
 
 Id.; Stobart v. State,
 
 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart, supra; Johnson v. Bossier Parish Sch. Bd.,
 
 43,817 (La.App.2d Cir. 1/21/09), 3 So.3d 580,
 
 writ denied,
 
 2009-0676 (La.5/15/09), 8 So.3d 586.
 

 Supplemental Earnings Benefits
 

 The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551;
 
 Pinkins v. Cardinal Wholesale Supply, Inc.,
 
 619 So.2d 52 (La.1993). An employee is entitled to receive SEB if he or she sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his or her average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that
 
 *1016
 
 amount under the facts and circumstances of the individual case.
 
 Banks, supra; Freeman v. Poulan/Weed Eater,
 
 93,1530 (La.1/14/94), 630 So.2d 733. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage.
 
 Banks, supra; Daigle v. Sherwin-Williams Co.,
 
 545 So.2d 1005 (La. 989).
 

 Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEB or establish the | ^employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee in his or the employer’s community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i);
 
 Banks, supra; Daigle, supra.
 
 Actual job placement is not required.
 
 Banks, supra.
 

 In the instant case, it is undisputed that claimant sustained a work-related injury and received temporary total disability (“TTD”) benefits from the date of her surgery until she returned to work on October 22, 2007. Subsequently, as a result of her injury, claimant was assigned a 12% left upper extremity disability rating and a 7% total body loss disability rating. Claimant testified that she retired because she was unable to perform the physical duties required of a police officer, such as completing mandatory physical police training, qualifying for and actually using her firearm and taking action if a crime took place in her presence or if a suspect became combative.
 

 Dr. Barton’s deposition testimony was introduced into evidence at trial. Dr. Barton testified that he released claimant to return to work with restrictions because claimant felt that she was able to perform the administrative aspects of her job. However, Dr. Barton did not believe that claimant had the ability to perform the physical aspects of her job, stating that he did not believe that claimant “should be put into a position ... of chasing bad guys herself.” He explained:
 

 [I]n doing administrative work, particularly that did not involve a lot of lifting, was more maybe filling out paperwork, working on the computer, answering the phone, going to meetings, I felt she should do quite well.
 

 Ji* * *
 

 I did not feel that she would be safe nor do I think other people would be safe— that she would feel comfortable putting other people’s safety at risk if she were the one that had to apprehend or fight or wrestle with a subject.
 

 * * *
 

 Dr. Barton stated that he was uncertain whether claimant would ever be able to return to “full duty” as a police officer.
 

 The evidence showed that claimant’s duties as a police captain were primarily administrative in nature. However, claimant’s job description included physical requirements which mandated that she be able to perform her duties “unaided or with assistance of reasonable accommodations;” be “constantly physically fit to do the activities that the job requires;” and “respond to the citizens at all times.” Additionally, the General Order of the police department required all police officers, including captains, to “enforce all state, local, and federal laws” and “to take the appropriate enforcement action if advised of a crime or if a crime takes place in their presence.”
 

 Captain William James Nelson of the Shreveport police department testified that the job of a police captain was a “true
 
 *1017
 
 administrative job” and that there is “very little, if any interaction out on the street.” However, Captain Nelson admitted that there are certain situations in which a police captain could be required to respond to volatile situations in order to protect himself, herself and/or to protect the public. Captain Jacqueline Willis also testified that all police officers are required to respond if they witness a crime in progress.
 

 The evidence established that claimant did not have any problems |sdoing.her job before she sustained her work-related injury. After her injury, she was unable to physically perform her job and her physician limited her to light-duty work. Rather than maintain her on light-duty status, former Police Chief Henry Whitehorn made the decision to transfer claimant to a department in which her contact with the public increased, which, in turn, increased the likelihood that she would have to respond physically to volatile situations and possibly be required to restrain combative criminal offenders. Captain Willis testified that ordinarily, police officers who return to work on light-duty status are given “desk[-]duty work,” and their police vehicle is not returned to them until they are back on full-duty status. However, when claimant returned to work she had a police vehicle, carried a department-issued firearm and was assigned “commander duty” which required her to attend city council meetings to provide police presence and respond to any disturbances that occurred and report to crime scenes. Captain Willis testified, “She was doing.the job of full duty but she was still light duty.”
 

 The record reveals that at the time of claimant’s injury and subsequent retirement, she was a captain in the police department with over 27 years of experience. She testified that after her retirement, she had a job for approximately two months, but was unable to continue working because of her condition. She also testified that, at the time of trial, she was searching for a job. Based on this record, we find that claimant has met her burden of proving a prima facie case of entitlement to SEB.
 

 Therefore, the burden has shifted to the City to establish that claimant 13was physically able to perform a certain job, and that the job was offered to claimant in her or the employer’s community or reasonable geographic region. We find that the City has failed to meet its burden. As stated above, claimant was released to return to work on light-duty status. She returned to work in her pre-injury position of captain in the Human Resources Division, where she was able to perform all of her administrative duties. Soon after her return to work, however, claimant was transferred to the Uniform Services Division, where, again, she was able to perform the administrative aspects of her job. However, it is clear from the testimony of both claimant and Dr. Barton that, after her return to work, claimant was never physically able to perform all of the aspects of her job as a police officer. The testimony of claimant, Captain Nelson and Captain Willis established that the job of a captain police was mostly administrative in nature. However, claimant was, above all, a police officer, and was required to meet the physical demands of her job. Additionally, Captain Willis admitted that by being assigned a police vehicle, having her service weapon returned to her and by her assignment to city council meetings and commander duty, claimant was fulfilling a full-duty assignment, rather than light-duty work as ordered by her physician. Captain Willis also testified that she expressed her concerns to former-Chief Whitehorn about claimant’s transfer from Human Resources to the Uniform Services
 
 *1018
 
 Division, in light of claimant’s light-duty status. She testified that former-Chief Whitehorn stated, “[I]t may be the wrong thing, but I’m going to transfer her anyway.” This statement indicates that the City’s decision to transfer claimant was |inknowingly in violation of her physician’s return to work orders. Therefore, we find that the City failed to prove that the subsequent job assignment given to claimant after her return to work was within her physical capabilities.
 

 Retirement
 

 A claimant’s right to receive SEB is subject to a maximum of 520 weeks, but shall terminate “[w]hen the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than 104 weeks.” LSA-R.S. 2S:1221(3)(d)(iii). The retirement period referred to in Section 1221(3) refers only to a worker who has no intention of returning to work regardless of a disability.
 
 Key, supra; Johnson, supra; Peters v. General Motors Corp.,
 
 39,-279 (La.App.2d Cir.1/26/05), 892 So.2d 717. When a worker has retired from a heavy work duty job, but is still willing to take on light duty employment within the scope of the limitations imposed by his or her disability, then that worker is not considered to have withdrawn from the workforce and is not considered retired under Section 1221(3). See,
 
 Key, supra; Peters, supra.
 

 On the other hand, an employee who expresses his or her intention to both retire/stop working and not look for other employment, and who makes no effort to find another job, has retired within the meaning of Section 1221.
 
 Peters, supra,
 
 citing
 
 Randazzo v. Boh Brothers Constr. Co.,
 
 2001-1953 (La.App. 4th Cir.3/27/02), 814 So.2d 671,
 
 writ denied,
 
 2002-1162 (La.6/14/02), 818 So.2d 783, and
 
 Lytle v. City of New Orleans Through New Orleans Fire Dept.
 
 96-0039 (La.App. 4th Cir.9/11/96), 681 So.2d 12,
 
 writ denied,
 
 96-2466 (La.12/13/96), 692 So.2d 372.
 

 In
 
 Key, supra,
 
 the claimant, a custodial worker, suffered an on-the-job injury to her knee and underwent surgery. A FCE limited the claimant to sedentary work, noting that she would “have difficulty returning to work in the custodial department.” The claimant retired due to continued pain and limited mobility. The employer later terminated the claimant’s benefits, stating that she had retired and she had already received the 104-week statutory maximum of SEB. The claimant filed a disputed claim for benefits. During the hearing, the claimant testified that she retired “because of [my] knees” and “when I get well, I will, you know, return ... because I liked working for [the employer].” The employer did not introduce any evidence to contradict the claimant’s testimony. The WCJ found that the claimant was not retired under Section 1221. The WCJ reasoned that the claimant had no intention of retiring but for her work-related injury. This court affirmed.
 

 In
 
 Johnson, supra,
 
 the claimant was employed as a custodial worker. After suffering an on-the-job abdominal injury, the claimant underwent multiple surgeries. He returned to work and was able to complete his job duties, but only with the assistance of other employees. The claimant retired when he became totally unable to do his job duties. The employer initially paid SEB, but terminated benefits after 104 weeks of payment. During the trial, the claimant testified that he did not want to retire, but did so on the advice of his physician. The claimant’s physician testified that the claimant left the work force because he was medically unable to perform his hajob. The WCJ found that the claimant was entitled to continue to receive
 
 *1019
 
 SEB, reasoning that the claimant’s decision to retire was entirely based on medical reasons. This court affirmed the WCJ’s decision.
 

 In
 
 Peters, supra,
 
 the claimant, an assembly line employee for General Motors, developed carpal tunnel syndrome in both hands due to his job. Despite surgical intervention, the claimant became disabled from work. After initially paying workers’ compensation benefits, the employer terminated the benefits; the WCJ reinstated them. Thereafter, the employer identified a job which purportedly accommodated the claimant’s medical restrictions. . The claimant began working in the position, but was unable to do the job. Subsequently, the claimant retired. At the trial, the claimant testified that “the only reason why I retired is to get some relief until I can get my hands together to where I can go and do a job.” He also testified that he did not intend to permanently withdraw from the work force, and he intended to return to work “as soon as I’m able medically to go to work.” The claimant admitted that he had not applied for work anywhere since he retired. The WCJ ruled that the claimant had not withdrawn from the workforce and was entitled to continued SEB. This court affirmed the WCJ’s ruling.
 

 In the instant case, claimant submitted her letter of retirement within weeks of her return to work. In the letter, she stated that she was retiring “to pursue [her] personal interest.” However, at the hearing, claimant testified that she retired because “I did not feel that I could perform the duties as a police officer.” She stated, “I knew that the basic requirements for the job 11 iacould not physically do and as a result this was taxing on me emotionally.” She further stated that she was unable to perform all of the “physical requirements” of her position, and that she unable to “handle a situation if a volatile situation occurred.” Furthermore, she testified that she was restricted from lifting beyond a certain weight and that she “was always in fear of just if I got into a confrontation.” Claimant testified unequivocally that it was not her intention to withdraw from the workforce. She stated that since her retirement, she worked for a telemarketing company for approximately two months, and she was looking for a job at the time of the trial.
 

 On cross-examination, claimant testified that she opted to retire, rather than to request another position, because no other positions were offered to her. She stated:
 

 I retired as a police officer from the Police Department because there’s nothing as a, police officerf,] that’s from chief all the way down[,] that would not subject you to possibly becoming physically involved with the situation. That’s what I retired from. , I did not retire from working.
 

 In response to claimant’s testimony with regard to her reasons for retiring, the city introduced her medical records, which included notations from claimant’s counseling sessions with Terri Harrington, a licensed clinical social worker. The notes revealed that weeks before claimant’s return to work, she mentioned retiring and moving to Texas to be closer to her family.
 

 Based on the record, we find that the WCJ’s conclusion that claimant intended to permanently withdraw from the workforce is clearly wrong. |uClaimant testified that although she was able to perform the administrative aspects of her job, she retired from the police force because she did not feel that she could perform all of the physical requirements of being a police officer. She clearly stated that she retired from the police force, but she “did not retire from working.” Dr. Barton testified that he did not believe that claimant would ever return to “full
 
 *1020
 
 duty” as a police officer. Additionally, claimant provided unrefuted testimony that since her retirement from the police department, she has sought other employment and, in fact, had a job for approximately two months. Therefore, we find that the record does not contain a reasonable factual basis for the WCJ’s conclusion that claimant intended to both retire/stop working and not seek other employment. Accordingly, the WCJ was manifestly erroneous in finding that claimant was not entitled to SEB.
 

 Penalties and Attorney’s Fees
 

 Claimant further contends the WCJ erred in failing to award penalties and attorney’s fees due to the City’s late approval and payment of certain medical expenses. Claimant’s physician recommended counseling. The City failed to timely approve and pay for the counseling.
 

 LSA-R.S. 23:1201(1) provides:
 

 Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
 

 In
 
 Brown v. Texas-LA Cartage, Inc.,
 
 98-1063 (La.12/01/98), 721 So.2d 885, 890, our Supreme Court defined the phrase “arbitrary and capricious,” as used in this context, as follows:
 

 Arbitrary and capricious behavior consists of willful and unreasonable action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern.
 

 Penalties are
 
 stricti juris
 
 and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay.
 
 Johnson, supra,
 
 citing
 
 Young v. Christus Schumpert Medical Center,
 
 39,593 (La.App.2d Cir.5/11/05), 902 So.2d 1180;
 
 Lee v. Schumpert,
 
 36,733 (La.App.2d Cir.1/29/03), 836 So.2d 1214.
 

 In the present case, since claimant filed her claim for SEB, the City has vehemently controverted the claim for benefits based on claimant’s retirement. Based on the wording of claimant’s letter of retirement, we cannot say that the City’s refusal to pay SEB was willful or unreasonable. Thus, we find that the refusal was not arbitrary, capricious or without probable cause. We agree with the WCJ’s conclusion that claimant was not entitled to recover penalties and attorney’s fees.
 

 CONCLUSION
 

 For the reasons set forth herein, the judgment of the WCJ finding that claimant was not entitled to supplemental earnings benefits is hereby reversed. We affirm the WCJ’s refusal to award penalties and attorney’s fees. Defendant, the City of Shreveport, is to bear the costs of this appeal in the amount of $146.50.
 

 REVERSED IN PART; AFFIRMED IN PART.
 

 [1]
 

 . "The purpose of entering DROP [is] not to retire, but to divert retirement income into a special DROP account and not to the retirement system for a period of three years. Actual retirement is not required at the end of the three-year period, and continued employment is not uncommon[.]” See,
 
 Johnson v. Bossier Parish Sch. Bd.,
 
 43,817 (La.App.2d Cir. 1/21/09), 3 So.3d 580, 585,
 
 writ denied,
 
 2009-0676 (La.5/15/09), 8 So.3d 586.