STEWART, J.
|! Plaintiff/Appellant, Angela Holmes, is appealing the judgment of the workers’ compensation judge (“WCJ”), denying her benefits subsequent to September 27, 2009. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
In August of 2008, Angela Holmes was hired as a nurse’s assistant at Nursecare Nursing and Rehabilitation Center (“Nursecare”). On May 15, 2009, Ms. Holmes sustained an injury while working within the course and scope of her employment at Nursecare. She sustained this injury by slipping on a puddle of water and falling on her back in a shower room while she was putting up some dirty laundry. She did not seek medical attention that day, and went on to complete her regular shift. Ms. Holmes was treated for lower back pain at a Quick Care Clinic the following day, May 16, 2009. Soon thereafter, she sought treatment from the physician of her choice, Dr. James Dossey. Dr. Dossey determined that Ms. Holmes suffered from a back contusion and recommended physical therapy and medication for her condition. He restricted her to light duty and continued to treat her for the next several weeks.
A lumbar MRI was performed on July 7, 2009. It showed multiple degenerative changes, particularly at the L4-5 disc on the left. Dr. Dossey recommended that Ms. Holmes seek an orthopedic consultation. On August 13, 2009, she sought treatment from an orthopedic surgeon of her choice, Dr. Eubulus Kerr. Dr. Kerr identified a small herniation at L4-5. He diagnosed Ms. Holmes with lumbar radicu-lopathy, and recommended that she receive physical therapy, along with epidural steroid injections. She |2opted not to follow Dr. Kerr’s recommendations, and did not return to him until September 6, 2009. She testified at trial that she did not seek the recommended treatment because she was “depressed.” However, she visited the emergency room on April 8, 2010, July 15, 2010, September 16, 2010, November 8, 2010, and December 31, 2010, each time complaining of back and leg pain related to the May 15, 2009, work incident.
After missing four days of work, Ms. Holmes returned to Nursecare on May 19, 2009, in a light duty job. On August 31, 2009, she was terminated from her employment at Nursecare for insubordination. During the next two years, she sought employment with between 144 and 180 prospective employers, either by phone or in person.
Ms. Holmes initially began receiving unemployment benefits during the week of *723 October 3, 2009. Louisiana Workforce Commission records show that she received benefits for 72 weeks from October 2009 through June 2011.
On May 30, 2010, Ms. Holmes filed Form LDOL-WC-1008 with the Louisiana Office of Workers’ Compensation, arguing that “no wage benefits have been paid” and requesting to choose Dr. Carter Boyd as her treating physician. She was denied workers’ compensation benefits.
Trial on the merits was held on April 23, 2012. WCJ Patrick Robinson rendered judgment partially in favor of Holmes, and assigned the following written reasons:
• Holmes sustained an accident on May 15, 2009, in the course and arising out of employment with Nursecare, causing the injuries for which she was treated through September 27, 2009.
Is* Nursecare’s motion for involuntary dismissal in reference to Holmes’ motion to choose Dr. Boyd as her treating physician is granted.
• Any injuries claimed by Holmes subsequent to September 27, 2009, are not causally related to the May 15, 2009, incident.
• All medical benefits subsequent to September 27, 2009, are denied.
• All indemnity benefits subsequent to September 27, 2009, are denied.
• Holmes was entitled to supplemental earnings benefits, based upon a zero wage earning capacity, from September 1, 2009, through September 26, 2009, based upon a pre-injury average weekly wage of $341.50, which corresponds to a weekly indemnity rate of $227.28, plus judicial interest thereon from the date that each payment was due until paid.
• Nursecare failed to reasonably controvert Holmes’ claim for supplemental earning benefits from September 1, 2009, through September 26, 2009, and therefore is liable to her for a penalty in the amount of $2,000.00 and attorney fees in the amount of $2,000.00, plus judicial interest thereon from June 5, 2012, until paid.
LAW AND DISCUSSION
We note that Holmes is appearing before this court in proper person. Her brief simply sets forth a recitation of the facts surrounding the alleged work-related accident, and does not address the issue of whether the WCJ’s judgment was proper. This pro se brief does not comply with the requirement of Uniform Rules, Court of Appeal, Rule 2-12.4. It contains no assignments of error, no record references, and no jurisdictional statement. However, the courts of this State have considered briefs in improper form in instances when it is filed by pro se claimants. See Cheatham v. Luberski, 43,603 (La.App.2d Cir.9/17/08), 996 So.2d 373. In light of Holmes’ pro \ 4se status, this court will attempt to discern the substance of her argument and treat it as though properly raised.[1]
Holmes’ pro se brief challenges the WCJ’s judgment that denied her benefits subsequent to September 27, 2009. More specifically, the tone of her brief suggests that she contends that the WCJ erred in determining that she was not entitled to workers’ compensation benefits for the complained of symptoms after September 27, 2009. She highlights her October 27, 2011, appointment with Dr. Kerr, who concluded that “her pain was most likely exacerbated” by the May 15, 2009, incident.

*724
Compensable Injury

It is well settled that the factual findings of the WCJ are subject to manifest error review. Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275; Kinchen v. City of Shreveport, 46,490 (La.App.2d Cir.9/21/11), 73 So.3d 1011, writ granted, (La.12/2/11), 76 So.3d 1161. Under this legal standard, the reviewing court does not decide whether the fact finder was right or wrong, but only whether its findings are reasonable. Id.; Stobart v. State, 617 So.2d 880 (La.1993). The manifest error standard applies even when the decision of the WCJ is based upon written reports or depositions. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Alexander v. Brookshire Grocery Company, 42, 855 (La.App.2d Cir.1/9/08), 975 So.2d 100, writ denied, 08-0503 (La.4/25/08), 978 So.2d 367. Where there are two permissible views of the evidence, the fact | ^finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Johnson v. Bossier Parish Sch. Bd., 43, 817 (La.App.2d Cir.1/21/09), 3 So.3d 580, writ denied, 2009-0676 (La.5/15/09), 8 So.3d 586. Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Taylor v. Hollywood Casino, 41,196 (La.App.2d Cir.6/28/06), 935 So.2d 293; City of Shreveport, 43,132 (La.App.2d Cir.3/26/08), 980 So.2d 203.
An employee is entitled to compensation benefits if he or she suffers a personal injury by an accident arising out of and in the course of employment. La. R.S. 23:1031. The chain of causation required by the statutory scheme as adopted by the legislature in La. R.S. 23:1031 is that the employment causes the accident, the accident causes the injury, and the injury causes disability. Buxton, supra. The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to an on-the-job injury. Id.
As we stated in the fact portion of this opinion, Ms. Holmes injured herself on May 15, 2009,[2] while working in the course and scope of her employment at Nurse-care. At trial, she testified that she sustained this injury by slipping on a puddle of water and falling on her back in a shower room while she was putting up some dirty laundry. Soon thereafter, Ms. Holmes sought treatment from the physician of her choice, Dr. James Dossey. Dr. Dossey, a general practitioner, determined that Holmes | (¡suffered from a back contusion and recommended physical therapy and medication for her condition. He restricted Ms. Holmes to light duty and continued to treat her for the next several weeks. She returned to work on May 19, 2009, and worked in a light duty capacity until she was terminated for insubordination on August 31, 2009.
A lumbar MRI was performed on July 7, 2009. It showed multiple degenerative changes, particularly at the L4-5 disc on the left. Dr. Dossey recommended that Holmes seek an orthopedic consultation. In a “Return-to-Work report,” dated July 10, 2009, Dr. Dossey selected the “light work” option in the degree of work portion of the report. On the second page of this report, Dr. Dossey made a notation that “[it is] not reasonable to expect release within 90 days.”
On August 13, 2009, Ms. Holmes sought treatment from the orthopedic surgeon of her choice, Dr. Eubulus Kerr. She complained of neck pain that radiated down *725 her lower left extremity. Dr. Kerr identified a small herniation at L4-5. Dr. Kerr diagnosed Ms. Holmes with lumbar radicu-lopathy, and recommended that she receive physical therapy, along with epidural steroid injections. Ms. Holmes opted not to follow Dr. Kerr’s recommendation to take the steroid injections, and did not return to see him until September 6, 2009. During the September 6, 2009, visit, she complained of right upper trapezial pain, and lower back pain that radiated to both posterior lower extremities.
|7She testified at trial that she did not seek the recommended treatment because she was “depressed.” No evidence of said depression was presented.
Even though Ms. Holmes did not seek treatment from Dr. Kerr from September 6, 2009, to October 27, 2011, she did visit the emergency room on five different occasions, spanning from April 8, 2010, to December 31, 2010. When she finally returned to seek treatment from Dr. Kerr on October 27, 2011, a MRI of her lumbar spine was performed. The progress report stated that the MRI results revealed disk desiccation and degeneration of L3^1, L4-5 disk degeneration with moderate spinal stenosis, and endplate changes with bilateral recess stenosis. Ms. Holmes complained of lower back pain, as well as numbness and tingling in both upper extremities. The progress report noted:
The patient was asking me also if this is all caused by workers’ compensation injury in 2009 from falling based on the MRI; however, the patient’s changes appear to be consistent with degeneration in nature. However, she states she does (sic) not have pain prior to the fall. There are no acute changes to suggest any of these were caused by the fall. However, she was asymptomatic prior to the fall, so our opinion is that the patient’s pain most likely was exacerbated by the fall, however, this is not an exact science and is only an opinion.
The evidence does not indicate that Dr. Kerr had the opportunity to review reports from Ms. Holmes’ emergency room visits during the time in which she did not seek treatment from him. Further, there is no indication that he was even aware of Ms. Holmes’ medical history prior to the May 15, 2009, fall. For these reasons, the WCJ wisely chose not to rely heavily on Dr. Kerr’s opinion in this progress report.
IsWhen she followed up with Dr. Kerr on March 23, 2012, Ms. Holmes complained of neck pain, headaches, a trapezial-type pain, and lower back pain. Dr. Kerr noted in his progress report that Ms. Holmes’ MRI of her lumbar spine revealed a broad-based disk bulging at L4-5 with bilateral recess stenosis and endplate changes at L4-5.
We note that Ms. Holmes had a longstanding history of back problems. On May 20,1996, while working as a clerk, she fell flat on her back on a concrete floor. Apparently, she was attempting to sit at her desk and the chair slipped from beneath her. She immediately went to the emergency room at St. Paul Medical Center in Dallas, Texas, complaining of lower back pain, and to a lesser degree, upper back pain. According to the emergency department record, Ms. Holmes stated that she has had a history of chronic back pain. She had received treatment from several physicians.
Based on this evidence, the WCJ determined that Ms. Holmes met her burden of proving a compensable injury, but only until September 2009. We agree with this finding. The WCJ’s determination that Holmes did not prove that her symptoms after September 2009 were causally related to her work accident is clearly supported by the record.

*726
Supplement Earnings Benefits (“SEB”)

Ms. Holmes asserted in her brief that the trial erred in determining that she was not entitled to workers’ compensation benefits for the complained of symptoms after September 27, 2009. This court assumes that she is referring to her entitlement to SEB.
|nThe purpose of supplemental earnings benefits (“SEB”) is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). An employee is entitled to receive SEB if he or she sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his or her average pre-injury wage. La. R.S. 28:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, supra; Freeman v. Poulan/Weed Eater, 93,1530 (La.1/14/94), 630 So.2d 733. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Banks, supra; Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEB or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to, or proven to be available to, the employee in his or the employer’s community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks, supra; Daigle, supra. Actual job placement is not required. Banks, supra.
|inAs stated throughout this opinion, Dr. Dossey restricted Holmes to light duty after her May 15, 2009, accident. Holmes returned to work on May 19, 2009, and worked in a light duty capacity until she was terminated for insubordination on August 31, 2009.
Ms. Holmes chose to abandon her medical treatment in September of 2009, and applied for and received unemployment benefits beginning the week of October 3, 2009. When she applied for and received these benefits, Holmes was representing that she was able to work. Coincidentally, Ms. Holmes’ emergency room treatment on April 8, 2010, coincided with the commencement of a six-week termination of her unemployment benefits.
We note that Ms. Holmes is not entitled to SEB during the 72 weeks between October 2009 and June 2011 that she received unemployment benefits. La. R.S. 23:1225(B). She received unemployment benefits during the following weeks:
• Week ending 10/30/09 through week ending 3/27/10;
• Week ending 5/15/10 through week ending 9/18/10;
• Week ending 10/19/10 through week ending 1/11/11;
• Week ending 3/26/11 through week ending 7/2/11.
As we previously stated, we agree with the WCJ’s determination that Ms. Holmes did not prove that her symptoms after September 2009 were causally related to her May 15, 2009, work accident. Therefore, we find that she is not entitled to SEB for the weeks between October 2009 and June 2011 that she did not receive unemployment benefits.
*727 | ^Penalties and Attorney Fees Award
Since Nurseeare denied Ms. Holmes SEB after terminating her employment due to insubordination with no supporting evidence, this court agrees with the WCJ’s finding that Nurseeare failed to reasonably controvert the claim for SEB for the period of September 1-26, 2009. Therefore, awarding Ms. Holmes penalties in the amount of $2,000.00 and attorney fees in the amount of $2,000.00 are appropriate in this matter. La. R.S. 23:1201(F).
CONCLUSION
For the reasons discussed above, we affirm-the WCJ’s judgment denying Ms. Holmes benefits subsequent to September 27, 2009. All costs are assessed against Ms. Holmes.
AFFIRMED.

. Nursecare filed a motion to dismiss this appeal on the basis that Holmes’ brief failed to comply with URCA Rules 2-12.1 through 2-12.6. The motion was denied on February 28, 2013.

. Ms. Holmes suffered another fall at work on June 25, 2009. However, the second accident was not referenced in the pleadings and is not at issue in this proceeding.